FILED ✓  LODGED ___
RECEIVED ___  COPY ___

FEB 1 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY: _____ DEPUTY

1  GARY M. RESTAINO
   United States Attorney
2  District of Arizona

3  GAYLE L. HELART
   Assistant U.S. Attorney
4  California State Bar No. 151861
   Two Renaissance Square
5  40 N. Central Ave., Suite 1800
   Phoenix, Arizona 85004
6  Telephone: 602-514-7500
   Email: gayle.helart@usdoj.gov
7  Attorneys for Plaintiff

8         IN THE UNITED STATES DISTRICT COURT

9           FOR THE DISTRICT OF ARIZONA

10  United States of America,                    CR-2:24-00122-PHX-SPL

11              Plaintiff,              Case No. CR-22-08133-PHX-SPL

12      vs.

13                                          PLEA AGREEMENT

14  James Thomas Andrew McCarty,

15              Defendant.

16

17         Plaintiff, United States of America, and the defendant, JAMES THOMAS

18  ANDREW MCCARTY, hereby agree to dispose of this matter on the following terms and

19  conditions:

20  1.    **PLEA**

21         The defendant will plead guilty to Counts 3, 4, 24, and 25 of the Indictment. Counts

22  3 and 4 each charge the defendant with Making False Statements, in violation of 18 U.S.C.

23  § 844(e), a Class C felony. Counts 24 and 25 each charge the defendant with Aggravated

24  Identity Theft, in violation of 18 U.S.C. § 1028A, a Class E felony.

25         The defendant will also plead guilty to Count 1 of the Indictment charged in Case

26  No. CR-22-00598-JAK, Central District of California, which charges the defendant with

27  Conspiracy, in violation of 18 U.S.C. § 371, a Class D felony. The parties anticipate and

28  agree that Case No. CR-22-00598-JAK, as to only the defendant, JAMES THOMAS

ANDREW MCCARTY, will be transferred from the Central District of California to the District of Arizona pursuant to Federal Rule of Criminal Procedure 20.

2.    **MAXIMUM PENALTIES**

a.    A violation of 18 U.S.C. § 844(e) (Making False Statements) (Counts 3 and 4) is punishable by a maximum fine of $250,000, a term of imprisonment of up to 10 years, or both, and imposition of up to three years of supervised release.  A maximum term of probation is five years, including a minimum term of one year if probation is imposed.

b.    A violation of 18 U.S.C. § 1028A (Aggravated Identity Theft) (Counts 24 and 25) is punishable by a maximum fine of $250,000, a mandatory minimum term of 2 years' imprisonment to run consecutive to the qualifying underlying felony, and any subsequent term of imprisonment for an additional count of § 1028A will be at the Court's discretion to run consecutive or concurrently, in whole or in part, or both a term of imprisonment and fine, and a term of supervised release of up to one year.

c.    A violation of 18 U.S.C. § 371 (Conspiracy) is punishable by a maximum fine of $250,000, a term of imprisonment of up to 5 years' imprisonment, or both, and imposition of up to three years of supervised release.  A maximum term of probation is five years, including a minimum term of one year if probation is imposed.

d.    According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1)    make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)    pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3)    serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4)    pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

e.    The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3.    AGREEMENTS REGARDING SENTENCING**

a.    <u>Stipulation: Range of Potential Sentence</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant's sentence on the instant matter for all the counts to which he is pleading (Counts 3, 4, 24, and 25 of the District of Arizona Indictment, and Count 1 of the Central District of California Indictment) shall be between 48–84 months (4–7 years). The defendant also agrees that all conduct may be considered by this Court, even for dismissed counts. The parties are free to argue for any term within the range of 48–84 months in the instant case. In the Court's analysis, the defendant understands the Court will be able to consider the entirety of the investigation which includes the relevant conduct in the District of Arizona as well as the relevant conduct from the Central District of California.

b.    <u>Stipulation: Supervised Release</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that, upon release from imprisonment, the defendant shall be placed on the statutory maximum term of supervised release on each count that will run concurrent to each other.

c.    <u>Acceptance of Responsibility</u>. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

d. <u>Non-Binding Recommendations</u>. The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

e. <u>Restitution</u>. Pursuant to 18 U.S.C. § 3663, 3663A and/or 2248, the defendant specifically agrees to pay full restitution to all victims, even for dismissed counts, in an amount to be determined by the court, but in no event, more than $250,000.00 per victim. "Victims" include persons or entities directly or proximately harmed by defendant's "relevant conduct" including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. §1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663, 3663(A) or 2248. Pursuant to 18 U.S.C. §§ 3663 and 3664(j)(1), "victims" also include persons or entities (whether private or government: state, federal or tribal) that have paid or costs related to defendant's conduct, including insurance providers and health care providers (including those such as Medicaid, Medicare and AHCCCS). Even if the victim did not suffer physical injury, the defendant expressly agrees to pay restitution for expenditures and future expenses related to treatment for mental or emotional trauma suffered by the victims. Such expenditures shall include but are not limited to: mental health treatment and counseling, in-patient treatment, and traditional Native American ceremonies treatment. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

f. <u>Assets and Financial Responsibility</u>. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's

1  Office to immediately obtain a credit report as to the defendant in order to evaluate the

2  defendant's ability to satisfy any financial obligation imposed by the Court. The defendant

3  also shall make full disclosure of all current and projected assets to the U.S. Probation

4  Office immediately and prior to the termination of the defendant's supervised release or

5  probation, such disclosures to be shared with the U.S. Attorney's Office, including the

6  Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the

7  Inmate Financial Responsibility Program to fulfill all financial obligations due and owing

8  under this agreement and the law.

9        g.     If the defendant is a member of a Native American tribe that provides "per

10  capita" payments to its members, the defendant agrees that any such "per capita" payment

11  shall be paid over to the Clerk of the Court and applied to the defendant's restitution

12  obligation until restitution to all victims is paid in full.

13  **4.    AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

14        a.     Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States shall dismiss

15  Counts 1, 2, 5-23, and 26 at the time of sentencing.

16        b.     At sentencing, the United States shall not prosecute the defendant for any

17  additional offenses committed by the defendant in the District of Arizona currently known

18  by the United States, from the facts determined in the current District of Arizona

19  investigation. The defendant understands, however, that the Court will take into account

20  all the facts learned in the investigation as relevant conduct, and the investigation from the

21  Central District of California.

22        c.     This agreement does not, in any manner, restrict the actions of the United

23  States in any other district or bind any other United States Attorney's Office, with the

24  exception of the investigation contemplated in the Plea Agreement in the Central District

25  of California.

26  **5.    COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

27        a.     If the Court, after reviewing this plea agreement, concludes that any

28  provision contained herein is inappropriate, it may reject the plea agreement and give the

defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.    If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

## 6.    WAIVER OF DEFENSES AND APPEAL RIGHTS

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

- 6 -

7.    **DISCLOSURE OF INFORMATION**

a.    The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.    Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c.    The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1)    criminal convictions, history of drug abuse, and mental illness; and

(2)    financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8.    **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

9.    **ELEMENTS**

**Making False Statements (Counts 3 and 4, District of Arizona)**

On or about January 25, 2021 (Count 3) and January 25, 2021 (Count 4), in the District of Arizona and elsewhere:

1.    The defendant made, or caused to be made, a threat to kill, injure, or intimidate any individual or unlawfully damage or destroy a building, vehicle, or other real or personal property by means of an explosive;

2.    The defendant used, or caused to be used, an instrument of commerce, such as a computer, to communicate the threat; and

3.    The defendant acted knowingly and willfully.

A "threat" means an expression of intent to kill, injure, or intimidate an individual or unlawfully damage or destroy a building, vehicle, or other real or personal property by means of an explosive and made with the intent that others understand it as a serious threat. The government does not have to prove that the defendant intended to carry out the threat.

**Aggravated Identity Theft (Counts 24 and 25, District of Arizona)**

On or about April 16, 2021 (Count 24) and May 20, 2021 (Count 25), in the District of Arizona and elsewhere:

1.    The defendant knowingly used without legal authority a means of identification of another person;

2.    The defendant knew that the means of identification belonged to a real person; and

3.    The defendant did so during and in relation to a violation of 18 U.S.C. § 1038 (false information and hoaxes).

To prove a violation of 18 U.S.C. § 1038, the government must prove that (1) the defendant intentionally conveyed false or misleading information; (2) such false and misleading information indicated that an activity had taken or is taking place that would violate a section of 18 U.S.C. §844(e) under Chapter 40 of the

- 8 -

United States Code; and (3) such false and misleading information would reasonably be believed.

### Conspiracy (Count 1, Central District of California)

Beginning on or before November 7, 2020, and continuing through November 13, 2020, in the Central District of California and elsewhere:

1. There was an agreement between two or more persons to commit violations of 18 U.S.C. § 1030(a)(2)(C);

2. Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

To prove a violation of 18 U.S.C. §§ 1030(a)(2)(C) and 1030(c)(2)(B)(ii), the government must prove that (1) the defendant and/or a coconspirator intentionally accessed, or attempted to access, without authorization, a computer; (2) by accessing or attempting to access without authorization a computer that was used in or affected interstate or foreign commerce or communication; and (3) the offense was committed in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or of any State, to wit: criminal violations of California Penal Code § 148.3 (False Report of Emergency). Penal Code § 148.3 makes it a misdemeanor violation to "report[], or cause[] any report to be made, to any city, county, city and county, or state department, district, agency, division, commission, or board, that an 'emergency' exists, knowing that the report is false[]"

10.   **FACTUAL BASIS**

a.    The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

Between January 17, 2021, and June 30, 2021, I, JAMES THOMAS

ANDREW MCCARTY (age 18 during these offenses) engaged in "swatting" by way of using my computer to make calls with the VoIP, also called Voiceover IP. During each of the counts charged in the Indictment, I lived in Kayenta, Arizona, within the District of Arizona.

On January 25, 2021, I called Westfield High School in Westfield, Indiana. I misrepresented myself as John Doe 1, an actual Westfield High School student and someone who I knew to be an actual person. In the call, I stated that I brought an AR-15 rifle to shoot up the school and I stated that I would bring my father's guns to shoot up the school. I called several subsequent times while school officials responded to these threats. During one call, I stated I was outside the school with both an AR-15, Glock 18, and propane bottles and that I would shoot the propane bottles with the guns **(Count 3)**.

On January 25, 2021, approximately 20 minutes after calling Westfield High School, I called Vinita High School in Vinita, Oklahoma. I misrepresented myself as John Doe 2, an actual Vinita High School student and someone who I knew to be an actual person. In the call, I stated that I was in the car with an AR-15, Glock, and propane tanks set up around the outside of the school and I threatened to shoot the propane tanks before going into the school. I also demanded that school officials request for students to "add glitter on Snapchat, Aspertaine, runscom, discord.gg/hoe." "Aspertaine" is my name when I do gaming activities and "glitter" is my username. Discord is a social media platform that is used by individuals, including me, to do gaming activities **(Count 4)**.

On April 16, 2021, I called the Parma Police Department (Parma, Ohio). I represented myself as the homeowner who lived at a specific address on Rustic Trail, and that I had just killed my wife after I found her cheating on me, which was all false information. I stated I would kill everyone and blow up our trailer where we lived. I said that I would shoot the water tank, had bombs planted in my driveway, would kill my kids, and responding police officers. I used the name of

the real homeowner who is a real person and who I knew was a real person **(Count 24)**.

On May 20, 2021, I called the Parma Police Department (Parma, Ohio). I represented myself as the homeowner who lived at a specific address on Rustic Trail and that I had four bombs outside the nearby WalMart store. I used the name of the real homeowner who is a real person and who I knew was a real person **(Count 25)**.

In the District of Arizona, I am aware through the discovery that the investigation into my activities that supported this indictment in the District of Arizona began after the Vinita, Oklahoma phone call (Count 4) because, in part, of the telephone number I used ending in 3571 for about 12 successive calls between 11:28 a.m. and 1:17 p.m. EST. This phone number was associated with two other calls that I made and that have been charged in Counts 1 and 3. Further, a student in Vinita, Oklahoma High School knew me online as "James" in a gaming community, a Snapchat group called OG Paradise, and that I used "glitter" as my Snapchat username. Also, I told another student in this gaming community, who also went to Vinita, Oklahoma High School, that I had just "fake called." This second student knew that my email was aspertaine@proton.mail.com and that I used "glitter" to communicate with him on Snapchat. On December 17, 2020, prior to doing any of the activities that I have been charged with in the District of Arizona indictment, I was interviewed by the FBI about the Ring doorbell activities, and I told them that I used "aspertaine" as my online name, and I admitted to having done swatting type calls.

Relating to Ring doorbell swatting activities, from between at least November 7, 2020, and continuing through about November 13, 2020, in Los Angeles and Ventura Counties within the Central District of California, I conspired with others to intentionally access computers without authorization and obtained information from protected computers. Specifically, I or another co-conspirator acquired Yahoo! email accounts belonging to individuals throughout the United

States, then determined whether the account had a Ring account and doorbell camera device associated with the email account. If we determined that we could connect an email with a Ring doorbell account, I and other co-conspirators accessed, without authorization, these victim accounts, to further gather information about and identify the victims. Then, I and co-conspirators placed false emergency phone calls to law enforcement in the areas where the victims lived intending to elicit an emergency response. I and coconspirators accessed without authorization the Ring cameras belonging to the victims and broadcast on social media live video from the Ring cameras of the police response to these false emergency calls. Specifically, I admit that on November 13, 2020, I possessed, without authorization, the Yahoo! and Ring login credentials for a person identified in the indictment as Victim K, and that I used those credentials to access Victim K's Ring account. I then made a telephone call to the North Port Police Department (Florida) and falsely identified myself as Victim K's husband and said that I had just killed my wife, was holding a hostage, and that I had rigged explosives at my residence. I used my access to the Ring account to access Victim K's Ring camera devices and livestreamed video of the law enforcement response to the false police call. After this phone call, I posted messages on social media admitting that I had intruded into the account, did the swatting call, and I called it funny **(Count 1, Central District of California Indictment)**.

b.     The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read every part of this agreement and I have carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone

1  (including my attorney) that are not contained within this written plea agreement, are null

2  and void and have no force and effect.

3      I am satisfied that my defense attorney has represented me in a competent manner.

4      I fully understand the terms and conditions of this plea agreement.  I am not now

5  using or under the influence of any drug, medication, liquor, or other intoxicant or

6  depressant that would impair my ability to fully understand the terms and conditions of this

7  plea agreement.

8

9  12/15/23

10 Date                                            JAMES THOMAS ANDREW MCCARTY
                                                   Defendant

11

12                        **APPROVAL OF DEFENSE COUNSEL**

13      I have discussed this case and the plea agreement with my client in detail and have

14 advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the

15 constitutional and other rights of an accused, the factual basis for and the nature of the

16 offense to which the guilty plea will be entered, possible defenses, and the consequences

17 of the guilty plea including the maximum statutory sentence possible.  I have further

18 discussed the concept of the advisory Sentencing Guidelines with the defendant.  No

19 assurances, promises, or representations have been given to me or to the defendant by the

20 United States or any of its representatives that are not contained in this written agreement.

21      I concur in the entry of the plea as indicated above and that the terms and conditions

22 set forth in this agreement are in the best interests of my client.  I agree to make a bona fide

23 effort to ensure that the guilty plea is entered in accordance with all the requirements of

24 Fed. R. Crim. P. 11.

25

26

27 12/15/23

   Date                                            MYLES SCHNEIDER
                                                   Attorney for Defendant
28

- 14 -

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

GARY M. RESTAINO
United States Attorney
District of Arizona

_2/1/2024_
Date

_Gayle L Helart_
GAYLE L. HELART
Assistant U.S. Attorney

## ACCEPTANCE BY THE COURT

2/1/2024
Date

HONORABLE STEVEN P. LOGAN
United States District Judge

- 15 -