GARY M. RESTAINO
United States Attorney
District of Arizona

GAYLE L. HELART
California State Bar No. 151861
Email: Gayle.Helart@usdoj.gov
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>               Plaintiff,<br><br>      v.<br><br>James Thomas Andrew McCarty,<br><br>               Defendant. | No. 3:22-cr-8133-SPL<br>(District of Arizona)<br><br>No. 2:24-cr-00122-SPL<br><br>**SENTENCING MEMORANDUM** |

The government files this Sentencing Memorandum in anticipation of James Thomas Andrew McCarty's (hereafter "McCarty") sentencing currently set for June 17, 2024. The government is in receipt of the Presentence Report and McCarty's sentencing memorandum and all of the submitted character letters. In McCarty's sentencing memorandum, he asks the Court to consider sentencing him at the middle of the agreed to range of the plea agreement of range--48-84 months (4-7 months)--which would be 66 months, or 5.5 years. McCarty asserts arguments relating to traumatic events in his youth by peers, abuses by adults toward him during childhood, and medical and mental health conditions, in mitigation. McCarty also requests that this Court not impose Special Condition 9 that requires him to attend sex offender treatment.

The government requests a sentence at the high end of the negotiated range of 84 months, or 7 years. By the terms of the plea agreement, McCarty has benefitted from accepting responsibility (three levels) and by signing a plea agreement that agrees to dismiss a number of charges. For example, a real benefit is that the dismissed 18 U.S.C. § 1028A (Aggravated Identity Theft charges could be run consecutively to each other for a total of 14 years of time just related to Counts 20-26. The term of 84 months is necessary in this case because: (1) McCarty's conduct in both districts was serious; and (2) McCarty's conduct in the District of Arizona occurred after a search warrant and interview by the FBI. McCarty's sentence needs to be significant and address both general and specific deterrence.

**Relevant Facts**

This case involves several separate events of swatting, i.e. an act of calling a police department for a fictitious emergency designed to evoke a massive law enforcement or other official response. McCarty pleaded to four charges from an Indictment in the District of Arizona, and the count in which he is charged from the Central District of California.

From the District of Arizona indictment, Counts 1-9 alleged nine separate calls on separate occasions that can be characterized as "swatting." Counts 10-18 were alternate ways to charge the same 9 calls. Count 19 was Cyberstalking as McCarty called the police department in Parma, Ohio seven times claiming to be the resident or directing the police to a particular address of this family. Counts 20-26 were the seven occasions that McCarty used the name and identifiers of real persons during swatting calls in violation of § 1028A.

From the District of Arizona indictment, McCarty pleaded guilty to Counts 3 and 4, which were his swatting calls to high school officials in both Westfield, Indiana (Westfield High School) and Vinita High School (Vinita, Oklahoma), which McCarty did about 20 minutes apart from each other. McCarty also pleaded guilty to Counts 24 and 25, two aggravated identity theft counts, for which this Court must sentence to one mandatory term of two years consecutive to the term on the other counts, but the second § 1028A may be imposed consecutively or concurrently. See § 1028A(b)(4) (in relevant part providing that

a term of imprisonment imposed on a person for a violation of this section may, in the discretion of the court, run concurrently, in whole or in part, only with another term of imprisonment that is imposed by the court at the same time on that person for an additional violation of this section).  McCarty's District of Arizona swatting calls are described in the PSR ¶¶ 25-36.

The Arizona calls involved McCarty's varying statements that family members including children had been killed, pipe bombs and propane bottles would be detonated, bombs were present at the location where the "caller" was, and police would be killed if they responded.  McCarty used fictitious names and real names of persons associated with the locations where he wanted law enforcement to respond.  McCarty used VoIP (Voice over IP which is a way to make calls over computer IP networks), which were much harder to track and took several steps of law enforcement work.

The original investigation from the Central District of California McCarty's swatting calls, is described in the PSR at ¶¶ 8-21 and ¶¶ 37-51.  By looking at the dates in these paragraphs, the investigation included McCarty's activities both before and after his 18th birthday in October 2020, though he was only charged with conduct which occurred after he turned 18.  The California investigation resulted in a search warrant served on December 17, 2020, with assistance from both FBI agents from California and from the Flagstaff FBI office.  McCarty was interviewed for the California swatting activities. McCarty admitted his online username was "Aspertaine," a name which he used later in the Arizona calls.  He described his several times of swatting effectively in a way that would draw law enforcement emergency response, and that other individuals paid him money to do so.

The charges in the Arizona indictment all occurred after December 17, 2020, i.e. after the law enforcement interview by the FBI agents.

**Discussion**

At sentencing, this Court will calculate the Guidelines range, consider the factors under 18 U.S.C. § 3553(a) and explain its sentence choice. In this case, the sentencing range was calculated to be 33-41 months, with this Court mandated to impose at least one consecutive term of two years for § 1028A to the term of imprisonment chosen, and then imposing the second term either consecutively or concurrently at its discretion.

Under 18 U.S.C. § 3553(a), the factors this Court will consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

### *Government's recommendation of 84 months*

Swatting has the ability to cause major injuries and death. *See e.g. Finch v. City of Wichita, Kansas* 2020 WL 3403121 *5 (D. Kansas, June 19, 2020) (describing civil lawsuit stemming from swatting call where homeowner victim of hoax was shot and killed by police department); and *Kanizaj v. Santello,* 2017 WL 476787 *2 (D. Connecticut, February 6, 2017) (unpublished) (summary judgment granted for police department sued for Fourth Amendment violations; police department entered the home despite homeowners' protests and checked every room for shooter consistent with content of calls, later determined to be false, that "people with guns pointed to people's heads" and "a whole family on the floor.")

McCarty's conduct should not be conflated with annoying or harassing "prank calls" from which he has learned his lesson—such calls might include sending numerous pizza deliveries to a home or having a plethora of adult sex products delivered. The type of hoax calls McCarty made were specifically targeted toward deceiving police departments, school officials, and homeowners, believe that a crisis was occurring, or about

to occur. The calls caused confusion, anxiety, fear, all which had to be followed to the end to make sure the call was false and that the environment was safe. This was especially true with the school calls that included an entire student body whom school officials are responsible to keep safe during the day.

For at least two reasons, McCarty's conduct merits a sentence at the high end of the range negotiated by the parties. First, not many 18-year old individuals have a search warrant served at their home, with an accompanying interview by FBI agents about specific criminal activity. In fact, it is difficult to imagine a more glaring warning that communicates "stop!" which the FBI agents also stated to him that day. But, undeterred, McCarty kept at it making the calls that were charged in the Arizona indictment after the search warrant on December 17, 2020.

Second, McCarty's conduct was over the top in terms of, for example: (1) the volume of calls he did; (2) the contents of the calls which included bombs and propane tanks; (3) the contents that adults and children had been killed causing worry and concern by the victims of the calls until they could quickly ascertain their family was okay; (4) the contents of the calls including how police would be killed if they responded; (5) choosing two high schools as targets making school officials and police fear about a student body group's safety; (6) harassing one family in Count 19 repeatedly; and (7) doing this all to gain a sense of vengeance and superiority. (See e.g. PSR ¶ 30 where McCarty stated "add glitter on Snapchat, apertaine runscom, discord.gg/hoe" as a demand; and ¶ 33 where McCarty's call looks to be prompted out of revenge for the teenage girl in the house not sending nude pictures).

"Swatting causes disruption and wastes resources and time of emergency services. Diverts attention from real emergencies and can cause a risk of injuries and psychological harm to the persons targeted and the first responders." *Landes v. Bergami*, 2020 WL 3184296 *1 (W.D. Texas, June 15, 2020) (unpublished) (compassionate release motion denied for 30-year old who committed three swatting calls threatening hostages, bombs, and demanding ransom amounts, and received a 27 month sentence).

The term of 84 months is appropriate, as it takes into account the § 3553(a) factors, including the ones focused on both general deterrence and specific deterrence for McCarty. He has already shown that he took absolutely nothing serious about his conduct prior to being arrested in North Carolina, including being interviewed by federal law enforcement.

### *Term involving Sex Offender Treatment*

A district court has discretion to order special conditions of supervised release pursuant to 18 U.S.C. § 3553(a). *United States v. Reardon,* 349 F.3d 608, 619 (9th Cir. 2003). Conditions are permissible if they are reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender, and "involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release." Id. (other citations omitted). On plain error review in *Reardon*, a condition requiring the defendant to participate in outpatient drug treatment and testing as directed by probation was permissible in his sentencing for transporting child pornography as he was a recreational user of marijuana and methamphetamine at the time of his arrest and a psychological profile related to the defendant indicated he occasionally used methamphetamine to intensify the effect of his sexual experiences." *Id.*

Also, a condition of supervised release does not have to be related to the offense of conviction because the sentencing judge is statutorily required to look forward in time to crimes that may be committed in the future by the convicted defendant. United States v. Bainbridge, 746 F.3d 943, 951 (9th Cir. 2014) (defendant properly ordered to sexual deviancy evaluation" as a modification of his supervised release conditions for his underlying conviction of assault with intent to kidnap an adult woman victim).

In McCarty's case, the PSR identified the specific reason for recommending the condition and the government agrees. In the PSR ¶¶ 23 and 36, and again in the justification, the PSR author described McCarty's possession of illegal files pursuant to the Oklahoma search warrant following the Vinita, Oklahoma swatting calls, and coercing teenage girls to send nude images in the course of his conduct in California.

Respectfully submitted this 12th day of June, 2024.

> GARY M. RESTAINO
> United States Attorney
> District of Arizona
>
> */s Gayle L. Helart*
> GAYLE L. HELART
> Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Myles Schneider, *Attorney for Defendant*.

*s/ Lynne Hughes*
U.S. Attorney's Office